FIRST INTERSTATE BANK OF DENVER, N.A., Plaintiff-Appellee,

v.

ARIZONA AGROCHEMICAL COMPANY, Defendant-Appellant.

No. 84CA1331.

Colorado Court of Appeals,
Div. II.

Aug. 21, 1986.

Rehearing Denied Sept. 18, 1986.

Certiorari Denied (Bank) Jan. 20, 1987.

Hughes & Dorsey, Richard L. Thorgren, Denver, for plaintiff-appellee.

Trujillo and Mrzlak, P.C., Michael H. Trujillo, Monte Vista, for defendant-appellant.

VAN CISE, Judge.

In this action to recover proceeds from the sale of collateral, the defendant, Arizona Agrochemical Company (Agrochemical), appeals the summary judgment entered in favor of the plaintiff, First Interstate Bank (Bank). We reverse.

The following facts are not in dispute. As collateral for an October 1981 loan to Boyce Baumgardner (Baumgardner), the Bank relied upon its prior perfected security interest in specified pieces of Baumgardner's farm equipment and crops located in Saguache county.

In September 1982, Agrochemical perfected a lien on Baumgardner's townhome in Archuleta county by recording a judgment it had obtained against Baumgardner. In October 1982, the Bank recorded, in Archuleta county, a judgment it had obtained against Baumgardner.

In November 1982, Baumgardner, without the Bank's consent, had some of the encumbered farm equipment auctioned and received gross proceeds of $40,759.55. Shortly thereafter, Baumgardner gave Agrochemical $38,549.02 in exchange for a satisfaction of Agrochemical's judgment.

When the Bank subsequently learned of these events, it entered into a written agreement with Baumgardner which required him to record the satisfaction of judgment and thereafter to deed his townhome to the Bank. The Bank credited the equity in the property toward satisfaction of its judgment.

The Bank later filed this lawsuit against Agrochemical. In a motion for summary judgment, the Bank argued that its security interest in the farm equipment continued in any identifiable proceeds from the equipment sale and that the funds Agrochemical received from Baumgardner were, as a matter of law, identifiable proceeds to which it was entitled. The trial court granted the Bank's motion for summary judgment, and Agrochemical appealed.

On appeal, Agrochemical contends the trial court erred in finding that the funds it received from Baumgardner were identifiable proceeds. Agrochemical argues that the identifiable proceeds were the satisfaction of judgment. We agree.

With certain exceptions, a properly perfected security interest continues in collateral notwithstanding its disposition and

also may continue in "any identifiable proceeds including collections received by the debtor." Section 4–9–306(2) and (3), C.R.S. (1985 Cum.Supp.). "Proceeds" is defined as "whatever is received upon the sale, exchange ... or other disposition of collateral or proceeds." Section 4–9–306(1), C.R.S. (1985 Cum.Supp.).

At issue here is whether the phrase "received by the debtor" in § 4–9–306(2) modifies only the phrase "including collections" or if it modifies the phrase "identifiable proceeds" as well. If it modifies identifiable proceeds, also at issue is whether the security interest continues in identifiable proceeds received by the debtor once the proceeds leave the debtor's hands or whether it continues only in identifiable proceeds in the hands of the debtor. We adopt the latter construction.

The statute lacks appropriate punctuation to guide our resolution of this issue, but § 4–9–306, C.R.S. (Official Comment 1) reveals that in defining "proceeds" the term "whatever is received" is intended to mean whatever is received by the debtor, including identifiable proceeds. *Cf. First National Bank v. Bostron*, 39 Colo.App. 107, 564 P.2d 964 (1977). *But see Baker Production Credit Ass'n v. Long Creek Meat Co.*, 266 Or. 643, 513 P.2d 1129 (1973). Section 4–9–306, C.R.S. (Official Comment 2(c)) supports the further conclusion that a security interest continues only in identifiable proceeds in the hands of the debtor. *See First National Bank v. Bostron, supra; Humboldt Trust & Savings Bank v. Entler*, 349 N.W.2d 778 (Iowa App.1984) (cash proceeds from grain sold used to buy pickup which was traded for Buick; held, security interest continues in Buick). *But see Baker Production Credit Ass'n v. Long Creek Meat Co., supra.*

■ Pursuant to § 4–9–306(1) and (2), proceeds may result from the disposition of other proceeds, and proceeds may be converted between cash and noncash proceeds. *See Humboldt Trust & Savings Bank v. Entler, supra; Girard Trust Corn Exchange Bank v. Warren Lepley Ford, Inc.*, 25 Pa.D. & C.2d 395 (1958); *see also Fort*

*Collins Production Credit Ass'n v. Carroll Dairy*, 37 Colo.App. 536, 553 P.2d 95 (1976). Therefore, to enforce a security interest in identifiable proceeds, the secured party must trace the disposition of the original proceeds from one form to another until it finds identifiable existing proceeds, in the hands of the debtor, which are directly traceable to the original collateral. *See C.O. Funk & Son, Inc. v. Sullivan Equipment, Inc.*, 92 Ill.App.3d 659, 48 Ill.Dec. 24, 415 N.E.2d 1308 (1981); *cf. First National Bank v. Bostron, supra.*

■ Here, the Bank held a properly perfected security interest in Baumgardner's farm equipment. *See* §§ 4–9–203, 4–9–302, 4–9–303, and 4–9–401 to 4–9–403, C.R.S. (1985 Cum.Supp.). Hence, to identify the proceeds in which the security interest may have continued, we must trace the disposition of the sale proceeds.

Baumgardner received $40,759.55 as cash proceeds from the equipment sale. Section 4–9–306(1), C.R.S. (1985 Cum. Supp.). He disposed of these cash proceeds in two transactions.

In the first, he paid auction expenses of $2,210.53. Since Baumgardner exchanged this portion of cash proceeds for a service, he received no identifiable proceeds from this transaction in which the Bank's security interest could continue. *See* § 4–9–306(1) and (2), C.R.S. (1985 Cum.Supp.); *First National Bank v. Bostron, supra.*

In the second transaction, Baumgardner gave $38,549.02, the remainder of the cash proceeds, to Agrochemical in exchange for its satisfaction of judgment. In doing so, he converted that portion of the cash proceeds into noncash proceeds, which remained in his possession. *See Girard Trust Corn Exchange Bank v. Warren Lepley Ford, Inc., supra.*

Therefore, in tracing the disposition of the cash proceeds through these transactions, we agree with Agrochemical that at the time the Bank attempted to enforce any security interest it had in the proceeds, the only identifiable proceeds in the hands of the debtor consisted of the satisfaction of

judgment, which has value only to Baumgardner and the bank, and to which the bank is entitled.

We conclude that the trial court erred in entering summary judgment for the Bank based on its holding that the funds Agrochemical received were identifiable proceeds which the Bank could reach pursuant to § 4–9–306, C.R.S. (1985 Cum.Supp.). Given this disposition of the case, and the fact that the complaint raised additional claims for relief, it would be inappropriate to order, as Agrochemical requests, entry of summary judgment in its favor as a matter of law.

The judgment is reversed and the cause is remanded for further proceedings.

SMITH and KELLY, JJ., concur.